UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JYP ORLANDO, L.L.C.,
a Delaware limited liability
company,

    Plaintiff,

v.                                            CASE NO. _____

                                            JURY TRIAL DEMANDED

VTC, L.L.C. d/b/a Total Site
Solutions, a Maryland limited
liability company,

    Defendant.
_____/

## COMPLAINT

The plaintiff, JYP Orlando, L.L.C., a Delaware limited liability company ("JYP"), sues the defendant, VTC, L.L.C. d/b/a Total Site Solutions, a Maryland limited liability company ("TSS"), and alleges as follows:

### Jurisdiction, Parties & Venue

1.    JYP is a Delaware limited liability company with its principal place of business in Del Mar, California.

2.    TSS is a Maryland limited liability with its principal place of business in Columbia, Maryland.

3.    This Court has subject matter jurisdiction under 28 U.S.C. § 1332 because the amount in controversy exceeds $75,000.00 and this action is between citizens of different states.

4. Venue is proper in the Middle District of Florida, Orlando Division, pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims occurred here.

5. JYP has retained the undersigned firm and has agreed to pay a reasonable attorney fee.

6. All conditions precedent to this action have occurred or have been waived.

7. JYP demands a jury trial on all issues so triable.

## General Allegations

8. This lawsuit arises out of the improvement of an existing data center facility located at 9701 South John Young Parkway, Orlando, Florida 32819 (the "Data Center"). Specifically, this action centers around back-up diesel generators installed at and incorporated into the Data Center.

9. The Data Center was designed and constructed to house critical information technology systems and provides a completely redundant and continually operating facility to ensure that its clients' infrastructure is secure, operational, and accessible 24 hours a day.

10. On September 21, 2012, JYP, the owner of the Data Center, entered into a design contract with TSS (the "2012 Design Contract"). A true and correct copy of the 2012 Design Contract is attached hereto as Exhibit "A."

11. On April 26, 2013, JYP entered into a contract with TSS that incorporated the 2012 Design Contract and obligated TSS to provide construction management and procurement services for the improvement of the Data Center (the "2013 Construction Management Contract"). A true and correct copy of the 2013 Construction Management Contract is attached hereto as Exhibit "B."

12. Pursuant to the 2013 Construction Management Contract, TSS was obligated to acquire and install two *new* 12,470 volt diesel generators for use at the Data Center.

13. On March 13, 2014, and in conjunction with seeking final payment for its work under the 2013 Construction Management Contract, TSS represented to JYP in a Certification of Substantial Completion that its work was "sufficiently complete in accordance with the Contract Documents."

14. On March 8, 2015, JYP entered into another design contract with TSS (the "2015 Design Contract"). A true and correct copy of the 2015 Design Contract is attached hereto as Exhibit "C."

15. On April 30, 2015, JYP entered into a final contract with TSS that incorporated the terms of the 2015 Design Contract and obligated TSS to provide construction management and procurement services for the Data Center (the "2015 Construction Management Contract"). A true and correct copy of the 2015 Construction Management Contract is attached hereto as Exhibit "D."

16. Under the terms of the 2015 Construction Management Contract, TSS was obligated to acquire and install one *new* 12,470 volt diesel generator.

17. On June 16, 2016, and in conjunction with seeking final payment for its work under the 2015 Construction Management Contract, TSS represented to JYP in a Certification of Substantial Completion that its work was "sufficiently complete in accordance with the Contract Documents."

18. Pursuant to the 2012 Design Contract, the 2013 Construction Management Contract, the 2015 Design Contract, and the 2015 Construction Management Contract

3

(collectively, the "Contract Documents"), TSS was obligated to perform design, engineering, and constructions services in order to "deliver a complete turnkey package" to JYP.

19. Relying on TSS's expertise, JYP agreed to cede control over all design, engineering, and construction aspects of the Data Center to TSS.

20. TSS expressly contracted to and warranted that the products to be installed at the Data Center would be new 12,470 volt generators unless the parties agreed otherwise.

21. TSS failed to honor its obligations under the Contract Documents.

22. In July 2016, during commissioning by a hired third-party of the generator specified in the 2015 Construction Management Contract, JYP learned that none of the three generators acquired by TSS for incorporation into the Data Center was new.

23. All three generators acquired by TSS for incorporation into the Data Center were manufactured in 2010, and were surplus generators. The surplus generators were acquired by TSS from Ring Power Corporation ("Ring Power").

24. Ring Power advertises and offers for sale older generators, including those with zero usage time, as "used" and sells such generators for considerably less than new models of the same type.

25. Caterpillar, the manufacturer of the generators installed at the Data Center, advertises generators with manufacture dates as recent as 2014 and with zero usage hours as "used."

26. The three "new" generators that TSS acquired from Ring Power were not new when Ring Power submitted its proposals to TSS in 2013 and 2015, and they were not new when delivered to and installed in the Data Center in 2014 and 2016.

4

27. TSS knew or should have known that the generators incorporated into the Data Center were not as warranted to JYP in the Contract Documents.

28. In addition to the fact that the generators acquired by TSS were not new, one of the three generators acquired by TSS is not even a 12,470 volt generator, the voltage required by the 2015 Construction Management Contract, but rather is a 13,800 volt generator.

29. On August 19, 2016, counsel for JYP gave notice to TSS of the discrepancies between the generators as furnished versus the generators as contracted and warranted in the Contract Documents. A true and correct copy of the August 19, 2016 correspondence is attached hereto as Exhibit "E." Additionally, an officer of JYP conferred with an officer of TSS regarding these issues.

30. To date, TSS has failed and refused to remedy its breach of the Contract Documents by failing to replace the surplus generators it acquired for the Data Center with *new* generators that produce the specified voltage, as required by the Contract Documents.

## COUNT I - BREACH OF CONTRACT
### (2013 Construction Management Contract)

31. JYP realleges and incorporates by reference the allegations set forth in Paragraphs 1 through 30 above.

32. This is a claim for relief for TSS's breach of the 2013 Construction Management Contract.

33. Under Section 3.17 of the 2013 Construction Management Contract, Maryland law applies to all claims arising out of the 2013 Construction Management Contract.

34. Pursuant to the terms of the 2013 Construction Management Contract, TSS was required to acquire and incorporate into the Data Center two new 12,470 volt diesel generators.

35. Specifically, in Section 2.1.1 of the 2013 Construction Management Contract, TSS represented that the construction documents for the Data Center would call for the "installation of new diesel generators . . ."

36. Likewise, in Section 3.9 of the 2013 Construction Management Contract, TSS warranted to JYP that "materials and equipment furnished under this Agreement will be of good quality and new unless otherwise required or permitted by this Agreement . . ."

37. TSS breached the terms of the 2013 Construction Management Contract by failing to acquire and install new generators with 12,470 volt power ratings.

38. Instead of acquiring and incorporating new generators into the Data Center as required by the 2013 Construction Management Contract, TSS acquired surplus generators with manufacture dates in 2010 and installed such generators at the Data Center.

39. On August 19, 2016, and in accordance with 3.10 of the 2013 Construction Management Contract, counsel for JYP provided written notice to TSS that it was in breach of its contractual obligations.

40. Pursuant to Section 3.10 of the 2013 Construction Management Contract, TSS was required to promptly correct work rejected by JYP.

41. However, TSS has failed and refused to remedy its breach of contract by failing to replace the generators it acquired for the Data Center with the generators required by the 2013 Construction Management Contract.

42. JYP has suffered damages as a result of TSS's material breach of the 2013 Construction Management Contract.

43. TSS's material breach of the 2013 Construction Management Contract is the direct and proximate cause of JYP's damages.

WHEREFORE, Plaintiff, JYP, L.L.C., demands judgment in its favor and against Defendant, VTC, L.L.C. d/b/a Total Site Solutions, for damages, costs, interest, and for such further and other relief as the Court deems just and proper.

### COUNT II - BREACH OF CONTRACT
### (2015 Construction Management Contract)

44. JYP realleges and incorporates by reference the allegations set forth in paragraphs 1 through 30 above.

45. This is a claim for relief for TSS's breach of the 2015 Construction Management Contract.

46. Under Section 3.16 of the 2015 Construction Management Contract, Maryland law applies to all claims arising out of the 2015 Construction Management Contract.

47. Pursuant to Section 2.5 of the 2015 Construction Management Contract, TSS was required to acquire and incorporate into the Data Center a new diesel generator.

48. Further, in Section 3.8 of the 2015 Construction Management Contract, TSS warranted to JYP that "materials and equipment furnished under this Agreement will be of good quality and new unless otherwise required or permitted by this Agreement . . ."

49. TSS breached the terms of the 2015 Construction Management Contract by failing to acquire and install a new generator.

50. Instead of acquiring and incorporating a new generator into the Data Center as required by the 2015 Construction Management Contract, TSS acquired a generator with a manufacture date of 2010 and installed such generator at the Data Center.

51. In addition to the fact that the generators acquired by TSS were not new, one of the three generators acquired by TSS is not even a 12,470 volt generator, the voltage required by the 2015 Construction management Contract, but rather is a 13,800 volt generator.

7

52. On August 19, 2016, and in accordance with 3.9 of the 2015 Construction Management Contract, counsel for JYP provided written notice to TSS that it was in breach of its contractual obligations.

53. Pursuant to Section 3.9 of the 2015 Construction Management Contract, TSS was required to promptly correct work rejected by JYP.

54. However, TSS has failed and refused to remedy its breach of contract by failing to replace the generator it acquired for the Data Center with the generator required by the 2015 Construction Management Contract.

55. JYP has suffered damages as a result of TSS's material breach of the 2015 Construction Management Contract.

56. TSS's material breach of the 2015 Construction Management Contract is the direct and proximate cause of JYP's damages.

WHEREFORE, Plaintiff, JYP, L.L.C., demands judgment in its favor and against Defendant, VTC, L.L.C. d/b/a Total Site Solutions, for damages, costs, interest, and for such further and other relief as the Court deems just and proper.

## COUNT III – SPECIFIC PERFORMANCE
### (2013 Construction Management Contract)

57. JYP realleges and incorporates by reference the allegations set forth in paragraphs 1 through 30 above.

58. This is an alternative claim for relief seeking specific performance of the 2013 Construction Management Contract.

59. Under Section 3.17 of the 2013 Construction Management Contract, Maryland law applies to all claims arising out of the 2013 Construction Management Contract.

8

60. The 2013 Construction Management Contract is definite and certain in all its essential elements.

61. Pursuant to the terms of the 2013 Construction Management Contract, TSS was required to acquire and incorporate into the Data Center two new 12,470 volt diesel generators.

62. Specifically, in Section 2.1.1 of the 2013 Construction Management Contract, TSS represented that the construction documents for the Data Center would call for the "installation of new diesel generators . . ."

63. Likewise, in Section 3.9 of the 2013 Construction Management Contract, TSS warranted to JYP that "materials and equipment furnished under this Agreement will be of good quality and new unless otherwise required or permitted by this Agreement . . ."

64. TSS breached the terms of the 2013 Construction Management Contract by failing to acquire and install new generators with 12,470 volt power ratings.

65. Instead of acquiring and incorporating new generators into the Data Center as required by the 2013 Construction Management Contract, TSS acquired surplus generators with manufacture dates in 2010 and installed such generators at the Data Center.

66. On August 19, 2016, and in accordance with 3.10 of the 2013 Construction Management Contract, counsel for JYP provided written notice to TSS that it was in breach of its contractual obligations.

67. Pursuant to Section 3.10 of the 2013 Construction Management Contract, TSS was required to promptly correct work rejected by JYP.

68. However, TSS has failed and refused to remedy its breach of contract by failing to replace the generators it acquired for the Data Center with the generators required by the 2013 Construction Management Contract.

69. JYP has no adequate remedy at law for TSS's breach of the 2013 Construction Management Contract.

70. Because of the nature of the injury suffered by JYP, justice requires specific performance of the 2013 Construction Management Contract.

71. Accordingly, JYP is entitled to specifically enforce TSS's obligations under the 2013 Construction Management Contract, and to secure a remedy consistent therewith.

WHEREFORE, Plaintiff, JYP, L.L.C., demands judgment for specific performance in its favor and against Defendant, VTC, L.L.C. d/b/a Total Site Solutions, which requires TSS to comply with the terms of the 2013 Construction Management Contract, and for such further and other relief as the Court deems just and proper.

## COUNT IV – SPECIFIC PERFORMANCE
### (2015 Construction Management Contract)

72. JYP realleges and incorporates by reference the allegations set forth in paragraphs 1 through 30 above.

73. This is an alternative claim for relief seeking specific performance of the 2015 Construction Management Contract.

74. Under Section 3.16 of the 2015 Construction Management Contract, Maryland law applies to all claims arising out of the 2015 Construction Management Contract.

75. The 2015 Construction Management Contract is definite and certain in all its essential elements.

76. Pursuant to Section 2.5 of the 2015 Construction Management Contract, TSS was required to acquire and incorporate into the Data Center a new diesel generator.

77. Further, in Section 3.8 of the 2015 Construction Management Contract, TSS warranted to JYP that "materials and equipment furnished under this Agreement will be of good quality and new unless otherwise required or permitted by this Agreement . . ."

78. TSS breached the terms of the 2015 Construction Management Contract by failing to acquire and install a new generator.

79. Instead of acquiring and incorporating a new generator into the Data Center as required by the 2015 Construction Management Contract, TSS acquired a generator with a manufacture date of 2010 and installed such generator at the Data Center.

80. In addition to the fact that the generators acquired by TSS were not new, one of the three generators acquired by TSS is not even a 12,470 volt generator, the voltage required by the 2015 Construction Management Contract, but rather is a 13,800 volt generator.

81. On August 19, 2016, and in accordance with 3.9 of the 2015 Construction Management Contract, counsel for JYP provided written notice to TSS that it was in breach of its contractual obligations.

82. Pursuant to Section 3.9 of the 2015 Construction Management Contract, TSS was required to promptly correct work rejected by JYP.

83. However, TSS has failed and refused to remedy its breach of contract by failing to replace the generator it acquired for the Data Center with the generator required by the 2015 Construction Management Contract.

84. JYP has no adequate remedy at law for TSS's breach of the 2015 Construction Management Contract.

85. Because of the nature of the injury suffered by JYP, justice requires specific performance of the 2015 Construction Management Contract.

86. Accordingly, JYP is entitled to specifically enforce TSS's obligations under the 2015 Construction Management Contract, and to secure a remedy consistent therewith.

WHEREFORE, Plaintiff, JYP, L.L.C., demands judgment for specific performance in its favor and against Defendant, VTC, L.L.C. d/b/a Total Site Solutions, which requires TSS to comply with the terms of the 2015 Construction Management Contract, and for such further and other relief as the Court deems just and proper.

## COUNT V – BREACH OF EXPRESS WARRANTY PURSUANT TO MD. CODE ANN. COM. LAW §2-313
### (2013 Construction Management Contract)

87. JYP realleges and incorporates by reference the allegations set forth in paragraphs 1 through 30 above.

88. This is a claim for relief for TSS's breach of express warranty pursuant to Md. Code Ann. Com. Law §2-313.

89. Under Section 3.17 of the 2013 Construction Management Contract, Maryland law applies to all claims arising out of the 2013 Construction Management Contract.

90. The generators acquired by TSS for installation at the Data Center are goods within the meaning of Md. Code Ann. Com. Law §2-105.

91. Pursuant to Sections 2.1.1 and 3.9 of the 2013 Construction Management Contract, and by application of Md. Code Ann. Com. Law §2-313, TSS expressly warranted that the materials and equipment installed at the Data Center would be "new" unless otherwise permitted by the Contract Documents.

92. TSS's acquisition and installation of generators with 2010 manufacture dates constitutes a breach of the express warranty provisions of the 2013 Construction Management Contract.

12

93. Within a reasonable time after discovery that the generators were not new as warranted, JYP notified TSS that the generators acquired and installed by TSS did not conform to the 2013 Construction Management Contract, and the warranties contained therein.

94. JYP has suffered damages as a result of the defendant's breach of the express warranty provisions of the 2013 Construction Management Contract.

95. Pursuant to Md. Code Ann. Com. Law §2-714, JYP is entitled to compensatory damages for the difference in value between the generators acquired and installed at the Data Center and the value they would have had if the generators had been as warranted in the 2013 Construction Management Contract.

96. Additionally, pursuant to Md. Code Ann. Com. Law §2-715, JYP is entitled to recover its incidental and consequential damages resulting from TSS's breach of express warranty including, without limitation, the costs it will incur to acquire, install and commission new generators at the Data Center.

WHEREFORE, WHEREFORE, Plaintiff, JYP, L.L.C., demands judgment in its favor and against Defendant, VTC, L.L.C. d/b/a Total Site Solutions, for damages, costs, interest, and for such further and other relief as the Court deems just and proper.

### COUNT VI – BREACH OF EXPRESS WARRANTY PURSUANT TO MD. CODE ANN. COM. LAW §2-313
(2015 Construction Management Contract)

97. JYP realleges and incorporates by reference the allegations set forth in paragraphs 1 through 30 above.

98. This is a claim for relief for TSS's breach of express warranty pursuant to Md. Code Ann. Com. Law §2-313.

99. Under Section 3.16 of the 2015 Construction Management Contract, Maryland law applies to all claims arising out of the 2015 Construction Management Contract.

100. The generators acquired by TSS for installation at the Data Center are goods within the meaning of Md. Code Ann. Com. Law §2-105.

101. Pursuant to Sections 2.5 and 3.8 of the 2015 Construction Management Contract, and by application of Md. Code Ann. Com. Law §2-313, TSS expressly warranted that the materials and equipment installed at the Data Center would be "new" unless otherwise permitted by the Contract Documents.

102. TSS's acquisition and installation of a generator with a 2010 manufacture date constitutes a breach of the express warranty provisions of the 2015 Construction Management Contract.

103. In addition to the fact that the generators acquired by TSS were not new, one of the three generators acquired by TSS is not even a 12,470 volt generator, the voltage required by the 2015 Construction Management Contract, but rather is a 13,800 volt generator.

104. Within a reasonable time after discovery that the generator was not new and did not produce the required voltage as warranted, JYP notified TSS that the generator acquired and installed by TSS did not conform with the 2015 Construction Management Contract, and the warranties contained therein.

105. JYP has suffered damages as a result of the defendant's breach of the express warranty provisions of the 2015 Construction Management Contract.

106. Pursuant to Md. Code Ann. Com. Law §2-714, JYP is entitled to compensatory damages for the difference in value between the generator acquired and installed at the Data

Center and the value it would have had if the generator had been as warranted in the 2015 Construction Management Contract.

107.  Additionally, pursuant to Md. Code Ann. Com. Law §2-715, JYP is entitled to recover its incidental and consequential damages resulting from TSS's breach of express warranty including, without limitation, the costs it will incur to acquire, install and commission a new generator at the Data Center.

WHEREFORE, Plaintiff, JYP, L.L.C., demands judgment in its favor and against Defendant, VTC, L.L.C. d/b/a Total Site Solutions, for damages, costs, interest, and for such further and other relief as the Court deems just and proper.

## COUNT VII – PROFESSIONAL MALPRACTICE

108.  JYP realleges and incorporates by reference the allegations set forth in paragraphs 1 through 30 above.

109.  This is a claim against TSS for professional malpractice.

110.  As the design and construction manager for the Data Center, TSS provided professional engineering services to JYP.

111.  In this role, TSS was responsible for insuring that all equipment acquired for and incorporated into the Data Center met the appropriate standards required for the purposes for which the equipment was to serve.

112.  In performing engineering services for the Data Center, TSS received quotes and specifications from Ring Power for the new generators to be supplied by Ring Power to TSS for incorporation at the Data Center.

113. After receiving and evaluating the quotes and specifications from Ring Power, TSS issued purchase orders to Ring Power for the new generators that would be incorporated for use at the Data Center.

114. Following receipt of the purchase orders from TSS, Ring Power then provided submittals to TSS which specifically identified the generators being supplied by Ring Power to TSS for incorporation into the Data Center.

115. The Ring Power submittals show that the generators supplied by Ring Power had manufacture dates of 2010, and thus were not the "new" generators included by Ring Power in the quotes and specifications previously provided to TSS.

116. Likewise, the submittals show that one of the generators provided was a 13,800 volt generator, rather than a 12,470 volt generator as required by the 2015 Construction Management Contract.

117. TSS approved the Ring Power submittals, notwithstanding the fact that the submittals explicitly revealed that the generators provided were not new, and that one of the generators produced the incorrect voltage.

118. As a result of TSS's agreement to provide professional engineering services, TSS owed JYP a duty to properly supervise Ring Power and to confirm that the generators supplied by Ring Power for installation at the Data Center were new, and that they produced the appropriate voltage for use at the facility.

119. TSS breached that duty by failing to properly review the submittals provided by Ring Power, and by failing to examine the generators themselves, before permitting the incorporation of the non-conforming generators into the Data Center.

120. TSS's conduct in failing to review the Ring Power submittals before approving them fell below the standard of care used by similar professionals under similar circumstances.

121. TSS's conduct in failing to examine the generators themselves before approving them fell below the standard of care used by similar professionals under similar circumstances.

122. As a result of TSS's breach of the duty it owed to JYP to perform professional engineering services, which would include confirming that the equipment acquired from third-parties was appropriate for incorporation into the Data Center facility, JYP has suffered damages insofar as the used generators and the generator with the incorrect voltage supplied by Ring Power may be incapable of providing the services needed by JYP to meet the expectations of its clients at the Data Center.

123. Likewise, the used generators and the generator with the incorrect voltage may already be or become incompatible with other equipment installed at the Data Center, resulting in the loss or damage to that equipment.

124. TSS's breach of the duty it owed to JYP, by failing to properly perform its engineering responsibilities at the Data Center, is the direct and proximate cause of the damages suffered by JYP.

WHEREFORE, Plaintiff, JYP, L.L.C., demands judgment in its favor and against Defendant, VTC, L.L.C. d/b/a Total Site Solutions, for damages, costs, interest, and for such further and other relief as the Court deems just and proper.

Dated this 24th day of January, 2017.

_____
MICHAEL D. CROSBIE, ESQ.
Florida Bar No. 72575
Primary Email: mcrosbie@shutts.com
Secondary Email: bpearson@shutts.com
JENNIFER P. SOMMERVILLE, ESQ.
Florida Bar No. 126616
Primary Email: jsommerville@shutts.com
Secondary Email: tenglish@shutts.com
SHUTTS & BOWEN LLP
300 S. Orange Avenue, Suite 1000
Orlando, Florida 32801
Telephone: 407-423-3200
Facsimile: 407-425-8316

ORLDOCS 15179544 1